The opinion of the oourt was delivered by.
Tilghman, C. J.
This is an action on a promissory note drawn by Henry Lighty, the plaintiff in error, payable to Christian Neff or order, without defalcation, for three hundred dollars, dated Lancaster, November 25th, 1816, and payable the 1st of Jtpril, 1817. On the 6th of January, 1817, Neff assigned all his right and title to the said note, under his hand and seal, to Brenner and Bead, the plaintiffs below, who are defendants in error. The assignment was attested by a subscribing witness. The defendant pleaded payment, with leave to give the special matter in evidence. Two bills of exception to evidence were taken by the counsel for the deféndant on the trial in the Court of Common Pleas. Errors have been assigned, in the opinion of this court, on each of these bills, and there was also an error assigned in the verdict, which; having been relinquished, I shall take no notice of it. The second bill of exceptions may be disposed of in a-few words. The court rejected the evidence offered by the defendant, of certain declarations made by Christian Neff, before the giving of the note on which suit was brought, viz. “that he would fix Henry Lighty,” &c. No such declarations were contained-in the notice of special matter, given by the defendant to the plaintiffs, and therefore they could not be given in evidence. The great question between the parties turned on the first bill of exceptions. The plaintiffs denied that the matters of which notice had been given, except a particular part thereof, were legal evidence. The notice was placed at large on the record, and is in substance as follows: That the plaintiffs well knew, before they took the assignment from Neff, that he was insolvent, and that the note now in suit was given through mistake, imposition, and without consideration. This is the part of which the defendant was permitted to give evidence by the decision of the court. But all the rest was rejected, *132 viz. that u subsequent to the date of the note, and before the assignment to the plaintiffs, the defendant had paid divers sums of money, exceeding the amount of the notes for which he had been bound as security for Neff previous to the date of the note; and that he had also paid divers other sums of money after the said assignment, and before the commencement of this action, for which he had been previously, bound as security for the said Neff, and for which judgment had been obtained against him: That before the plaintiffs took the assignment, they came to the defendant, and asked him whether it would be paid; whereupon he told them that he would not pay it, and offered to inform them of the whole transaction between him and Neff, which they declined hearing, and said, that if they had known the note would not be paid, they would not have co.me to him; and that they would.return to Lancaster and put Neff in jail: That they did accordingly return to Lancaster, sued out a capias ad satisfaciendum against Neff, and had him arrested, and then took from him the transfer of this note. .And that the defendant has paid several thousand dollars for the said Neff, which he has lost by reason of his insolvency, of all which the plaintiffs were fully apprized before they took the assignment from him.” The Court of Common Pleas were- of opinion, that the note having been drawn expressly payable without defalcation, the defendant was precluded from every kind of defence partaking of the nature of defalcation, although he might, .show that the note was void in its origin, because obtained by fraud or without consideration. This, I think, is outrunning the act of assembly, (27th of February,. 1797,) by which nothing more was intended, than to put promissory notes dated in the city ,or county of Philadelphia, upon the same footing as commercial, negotiable paper in England, and in most of the other states of America. Before that, we had been behind our neighbours, in consequence of the decision in M‘Cullough v. Houston, 1 Dall. 441. But it was not designed to run into the contrary extreme, by giving to notes expressed to be without defalcation, a sanctity which should in all, circumstances preclude a defence which might call the validity of note in question, or show that though good in its creation, the holder ought not to recover on it. In Cromwell’s Executors v. Arrott, 1 Serg. & Rawle, 180, a note payable without defalcation on demand was indorsed, and kept by the indorsee for fourteen months after its date, without notice of the indorsement to the drawers. In the meantime, considerable- payments had been made to the payee, and it was held that these should be allowed by the holder, because he had not given notice of the in-dorsement in due time. Where a note is transferred in the usual course of business, without notice of any. objection to its payment, the holder takes it discharged from any--defence or equity which might have existed between the original parties. In Humphries v. Blight’s Assignees, (4 Dall. 370,) in the Circuit Court of the *133 United States, it was said by Judge Washing-tow, “ that in the case of negotiable paper, he had always, thought, that the assignee takes it discharged of all the equity between the original parties, .of which he had no notice. But, whenever the assignee has notice' of such equity, be takes the assignment at his peril.” The note now in question is not within the provisions of the act of the 271,h of February, 1797, because it is dated at Lancaster, and not ia the city or county of Philadelphia. It was determined, how/ever, in the ease of Lewis, &c v. Reeder, 9 Serg. & Rawle, 193, that a note, not within the purview of that act of assembly, if drawn expressly without defalcation, should not be subject, in the hands of a holder who came to it bona fide and without notice, to an inquiry into the want of consideration. But, if taken with notice, no doubt the want of consideration may be set up as a defence. Indeed, in the present instance, it was not denied, that the defendant nnight give evidence of any fraud pr unfairness in the obtaining of the note, of which the indorsee had notice at the time of his receiving it. But it was strenuously contended, that no advantage could be taken of a right of defalcation between the drawer and payee, because the drawer had stipulated not to defalk. It is unnecessary to consider what force there would have been in this argument, if the defendant had set up a right of defalcation existing at the date of the note. The case before us exhibits a right of defalcation, attended with circumstances of strong equity, which arose after the giving of the note and before its assignment. Can it be said, that the plaintiffs, who took an assignment, with full knowledge of these circumstances, are bona fide holders? I think not. Being informed that the payee was insolvent, and largely indebted to the drawer, they had him arrested on a capias ad satis-faciendum, and then, by way of procuring payment of their judgf ment, obtained the. assignment of this note. Can this be reconciled with principles of honesty and good conscience? On an application to chancery, I cannot but think, that the payee would have been enjoined from putting the note into circulation. The transaction has not one feature of a negotiation of paper in the usual course of business. The assignment is made under hand- and seal, in the presence of a subscribing witness. It was a desperate attempt to secure the payment of a pre-existing debt, at the expense of the drawer, who was to be turned round, to seek satisfaction from an insolvent debtor. There is nothing in the case of Lewis v. Reeder, so much relied on by the plaintiffs, to give counte- . nance to such a doctrine. There the paper was received, without notice of anything to impeach it. I repeat, that I give no opinion on -a case, if such should hereafter arise, where a note should be-drawn payable without defalcation, and afterwards the drawer should give notice to one who was about to take an assignment of it, for good consideration, that he should set off against ;it, a debt due from the payee to himself at the date o.e the note, or even af- *134 terwards, the payee not being insolvent. The ease before us is widely different, and contains circumstances, which, if proved to the satisfaction of the jury, ought, in my opinion, to bar the plaintiffs’ recovery. There was error, therefore, in rejecting the evidence offered by the defendant, for which the judgment should be reversed, and a venire de novo awarded.
Judgment reversed, and a venire facias de novo awarded.